1

2

3

4

5

6

7

8

9

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

10

STEPHEN KERR EUGSTER,

CASE NO. C15-0375JLR

11

Plaintiff,

ORDER GRANTING IN PART
AND DENYING IN PART
DEFENDANTS' MOTIONS TO
DISMISS AND STRIKING
PLAINTIFF'S SURREPLY

12

v.

13

WASHINGTON STATE BAR
ASSOCIATION (WSBA), et al.,

14

Defendants.

15

## I.   INTRODUCTION

16

17

Before the court is a motion for judgment on the pleadings (Jud. Mot. (Dkt. # 9))

18

by Defendants Chief Justice Barbara Madsen, Associate Chief Justice Charles Johnson,

19

and Justices Sheryl Gordon McCloud, Charles Wiggins, Steven González, Mary Yu,

20

Mary Fairhurst, Susan Owens, and Debra Stephens, all of whom are of the Supreme

21

Court of the State of Washington (collectively, "Judicial Defendants").  Also before the

22

court is a motion to dismiss (WSBA Mot. (Dkt. # 10)) by Defendants Washington State

1    Bar Association ("WSBA"), President Anthony Gipe, President-elect William D. Hyslop,

2    Immediate Past President Patrick A. Palace, and Executive Director Paula Littlewood, all

3    of whom are of the WSBA (collectively, "WSBA Defendants"). Mr. Eugster opposes

4    both motions. (Resp. (Dkt. # 14).)[1]

5          Having reviewed the submissions of the parties, the relevant portions of the

6    record, and the applicable law,[2] the court GRANTS in part and DENIES in part both

7    motions. The court dismisses with prejudice Mr. Eugster's claim regarding compulsory

8    membership in the WSBA, without leave to amend. The court also dismisses Mr.

9    Eugster's claim regarding misuse of compulsory bar dues but grants him leave to file an

10   amended complaint with respect to that claim, except that the WSBA is dismissed with

11   prejudice as a defendant to that claim. Mr. Eugster has the court's leave to amend his

12   complaint in a manner that cures the deficiencies identified herein within ten (10) days of

13   the entry of this order. Failure to do so will result in dismissal with prejudice of that

14   claim as well.

15

16

17   _____

18   [1] Mr. Eugster has also filed a surreply (Dkt. # 18-1). A surreply "must be filed within five days of the filing of the reply brief," "shall be strictly limited to" a request to strike material in the reply brief, and "shall not exceed three pages." Local Rules W.D. Wash. LCR 7(g)(2)-(3).

19   Mr. Eugster filed his surreply 11 days after Defendants' reply briefs. (*See* Surreply.) It contains argument only about the substantive merits of the case and totals 15 pages. (*See id.*) Mr.

20   Eugster's surreply is thus in complete contravention of the local rules, and the court STRIKES it. The court hereby warns Mr. Eugster that further disregard for the local rules may result in

21   sanctions.

22   [2] Mr. Eugster requests oral argument. (Resp. at 1.) The court deems oral argument to be unnecessary for the disposition of these motions. *See* Local Rules W.D. Wash. LCR 7(b)(4).

ORDER- 2

1

## II.   BACKGROUND

2       Plaintiff Stephen K. Eugster is a licensed attorney and a member of the WSBA.

3   (Am. Compl. (Dkt. # 13) ¶ 11).  The WSBA is an "integrated" bar association, meaning

4   membership and payment of dues are mandatory in order to practice law in the State of

5   Washington.  (*Id.* ¶¶ 11, 17); RCW 2.48.130, .140.  Since being admitted to the WSBA in

6   1970, Mr. Eugster has paid these mandatory dues.  (Am. Compl. ¶ 13.)  The WSBA is

7   organized under the State Bar Act, RCW 2.48.010 *et seq.*, but the Supreme Court enjoys

8   the inherent power to "admit, enroll, disbar and discipline" members of the Washington

9   bar.  *Matter of Wash. State Bar Ass'n*, 548 P.2d 310, 315-16 (Wash. 1976) (en banc).

10  Thus, although the State Bar Act purports to define some of the WSBA's activities and

11  purposes, it is subject to the Washington Supreme Court's "right of control of the bar and

12  its functions." *Id.* at 316.

13       The WSBA sets annual bar dues for its members.  *Keller Compliance Option for*

14  *the Year 2015*, Washington State Bar Association, http://www.wsba.org/Licensing-and-

15  Lawyer-Conduct/Annual-License-Renewal/Keller-Deduction (hereinafter, "*Keller*

16  *Compliance Website*").[3]  It spends some portion of those dues on political or ideological

17  _____

18       [3] At the motion to dismiss stage, the court may properly treat a website quoted and cited
in the complaint as incorporated by reference.  *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992,
19  998 (9th Cir. 2010) (citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322
(2007).  In his first complaint, Mr. Eugster cites to and quotes extensively from the Keller
20  Compliance Website to make the argument that the WSBA uses mandatory fees in contravention
of the Constitution.  (*See* Compl. (Dkt. # 1) ¶ 48.)   In the operative complaint, Mr. Eugster
21  retains the quoted language from the Keller Compliance Website but removes the citation.  (*See*
Am. Compl. ¶ 52.)  Even if the court were inclined to let this omission of citation dictate what it
22  can reference at this stage, any webpages from which Mr. Eugster "directly quoted" can be
treated as incorporated. *Daniels-Hall*, 629 F.3d at 998. Because the direct quote from the Keller

1   activities and is constitutionally compelled to reimburse that spending to bar members

2   who so request. *Id.* Rather than calculate exactly the money spent on nonchargeable

3   activities, for convenience's sake the WSBA uses the prior year's line item for "political

4   or ideological" activities to calculate the reimbursement available in the current year. *Id.*

5   For instance, in 2015, members paying the full $325.00 in annual bar dues had the option

6   to retain the $4.40 that the WSBA spent on such "nonchargeable" activities. *Id.* The

7   WSBA's remaining activities are funded, at least in part, by compulsory bar dues paid by

8   its members. *Id.* WSBA members can contest the classification of an activity as

9   chargeable or nonchargeable by requesting binding arbitration before a neutral arbitrator

10   chosen by the Chief Justice of the Washington Supreme Court. *Id.* All members are

11   provided notice of the right to opt out and challenge an activity's classification as

12   chargeable or nonchargeable, and that information is also available on the WSBA's

13   website. *Id.*

14        Mr. Eugster brought suit against WSBA Defendants and—because the WSBA

15   derives its power from the Supreme Court of Washington—also named the Supreme

16   Court and its justices as defendants. (*See id.*)  He has since dismissed his claims against

17   the Supreme Court itself, but retains his claims against Judicial Defendants and WSBA

18   Defendants. (Not. (Dkt. # 12.).)  Mr. Eugster seeks declaratory and injunctive relief from

19   compulsory WSBA membership and compulsory payment of bar dues. (Am. Compl.

20

21   Compliance Website remains in the amended complaint—citation or not—the court deems the Keller Compliance Website incorporated by reference in the amended complaint, and can therefore consider it at this stage. *See United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

22

1   ¶ 2.)  He asserts these claims under 42 U.S.C. § 1983, which provides injunctive

2   remedies for constitutional violations committed by individuals acting under color of law.

3   (*See* Am. Compl. at 11-21.)  Mr. Eugster has two claims:  1) that mandatory WSBA

4   membership violates his First and Fourteenth Amendment freedoms by compelling

5   association with that group; and 2) that mandatory WSBA dues and the way in which

6   they are spent violate his First and Fourteenth Amendment freedoms by compelling

7   speech and association.  (*See generally id.*)  He seeks declaratory and injunctive relief

8   redressing these alleged constitutional harms.  (*See id.*)  Judicial Defendants and WSBA

9   Defendants contend that he has failed to state a claim and seek dismissal of this case with

10  prejudice.

### III.   ANALYSIS

**A.   Legal Standard**

   1.  Motion to Dismiss for Lack of Standing

      Judicial Defendants move to dismiss for lack of Article III standing.  (See Jud.

Mot. at 5-11.)  First, they assert that the Washington Supreme Court is immune from

liability under 42 U.S.C. § 1983.  (Jud. Mot. at 5-7.)  This issue is moot because Mr.

Eugster subsequently dismissed the Washington Supreme Court as a party.  (*See* Not.)

However, Judicial Defendants make a more general argument that Mr. Eugster cannot

show the required likelihood of future harm to establish standing for declaratory relief

under Article III of the United States Constitution.  (*See* Jud. Mot. at 9-11.)  If he lacks

Article III standing, this court must dismiss under Federal Rule of Civil Procedure

12(b)(1) for lack of subject matter jurisdiction.  *See Oregon v. Legal Serv.'s Corp.*, 552

1  F.3d 965, 974 (9th Cir. 2009); *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136,

2  1140 (9th Cir. 2003).  To defeat that motion, Mr. Eugster must show that "the facts

3  alleged, if proved, would confer standing upon him." *Id.*

4        To demonstrate Article III standing, Mr. Eugster must show that (1) he has

5  suffered an "injury in fact" that is concrete, particularized, actual, and imminent, as

6  opposed to conjectural or hypothetical; (2) the injury is fairly traceable to the challenged

7  action of the defendant; and (3) it is likely, as opposed to speculative, that the requested

8  relief would redress the injury. *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560-61

9  (1992).  More concisely, these requirements are known as injury, causation, and

10  redressability. *See Massachusetts v. E.P.A.*, 549 U.S. 497, 540 (Roberts, C.J.,

11  dissenting).  Because Mr. Eugster seeks "declaratory and injunctive relief only, there is a

12  further requirement that [he] show a very significant possibility of future harm; it is

13  insufficient for [him] to demonstrate only a past injury." *San Diego Cty. Gun Rights*

14  *Comm. v. Reno*, 98 F.3d 1121, 1126 (9th Cir. 1996).

15       2.  <u>Motion to Dismiss for Failure to State a Claim and Motion for Judgment on the</u>
   <u>Pleadings</u>

16  

17        In the alternative to their standing argument, WSBA Defendants move to dismiss

   Mr. Eugster's claims pursuant to Rule 12(b)(6) (*see generally* WSBA Mot.), and Judicial

18  Defendants move for judgment on the pleadings pursuant to Rule 12(c), also asserting

19  that Mr. Eugster fails to state a claim under Rule 12(b)(6) (*see generally* Jud. Mot.).[4]

20  

21  _____

22     [4] Although Judicial Defendants and WSBA Defendants filed their motions before Mr.
   Eugster filed his amended complaint, the court can properly consider the motions as applied to

1   Under Rule 12(c), "[a]fter the pleadings are closed—but early enough not to delay trial—

2   a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c).  However,

3   because Judicial Defendants had not yet filed an answer in the case, the pleadings were

4   not closed and filing a motion for judgment on the pleadings was premature.  *See Doe v.*

5   *United States*, 419 F.3d 1058, 1061 (9th Cir. 2005).  Viewing Judicial Defendants' Rule

6   12(c) motion as such, the court would have no choice but to deny the motion.  *Id.*

7       The court instead construes the Rule 12(c) motion as a Rule 12(b)(6) motion.

8   District courts in this circuit can construe improperly filed motions to dismiss as motions

9   for judgment on the pleadings.  *See Aldabe v. Aldabe*, 616 F.2d 1089, 1093 (9th Cir.

10   1980).  In this case the opposite occurred—Judicial Defendants improperly filed a motion

11   for judgment on the pleadings—but the court sees no reason not to construe Judicial

12   Defendants' motion as one to dismiss under Rule 12(b)(6).  Although it is rarer, this court

13   and others in the Ninth Circuit have recast improper Rule 12(c) motions as Rule 12(b)(6)

14   motions.  *See Young v. Washington*, No. C06-1687JCC, 2008 WL 2705587, at *3 (W.D.

15   Wash. July 8, 2008) ("Because the standard applied to decide a Rule 12(c) motion is the

16   same as the standard used in a Rule 12(b)(6) motion, no prejudice to any party results

17   from treating a Rule 12(c) motion as a 12(b)(6) motion.") (internal citations omitted),

18   *aff'd in part, vacated in part*, 374 Fed. App'x 746 (9th Cir. 2010) (vacating only that the

19

20   his amended complaint because Mr. Eugster's "claims, factual allegations, and legal arguments
21   did not change in any material way" from his complaint to his amended complaint.
    *McQuiston v. City of L.A.*, 564 Fed. App'x 303, 305 (9th Cir. 2014).  It would be a mere
    formality, and a waste of resources, to require re-filing of both motions simply to change
22   reference to Mr. Eugster's amended complaint.  *See id.*

1   case was dismissed with prejudice); *Young v. Spokane Cty.*, No. 14-cv-98-RMP, 2014

2   WL 2893260, at *1 (E.D. Wash. June 25, 2014); *Skinner v. Mountain Lion Acquisitions,*

3   *Inc.*, No. 13-cv-00704 NC, 2014 WL 3853424, at *3 (N.D. Cal. Aug. 1, 2014); *Spring*

4   *Telephony PCS, L.P. v. Cty. of San Diego*, 311 F. Supp. 2d 898, 902-03 (S.D. Cal. 2004).

5   The thrust of Judicial Defendants' motion is that Mr. Eugster has failed to state a claim

6   under which relief can be granted.  (*See* Jud. Mot.)  Moreover, the same standard governs

7   a Rule 12(c) motion and a Rule 12(b)(6) motion.  *See Dworkin v. Hustler Magazine, Inc.*,

8   867 F.2d 1188, 1192 (9th Cir. 1989).  In sum, no party suffers prejudice from recasting

9   the mislabeled Judicial Defendants' motion.  Thus, because it is procedurally defective as

10  a Rule 12(c) motion, the court construes Judicial Defendants' motion for judgment on the

11  pleadings as a Rule 12(b)(6) motion to dismiss for failure to state a claim.

12          Motions to dismiss under Federal Rule of Civil Procedure 12(b)(6) test the legal

13  sufficiency of a claim.  *Conservation Force v. Salazar*, 646 F.3d 1240, 1241-42 (9th Cir.

14  2011).  To avoid dismissal, "a complaint must contain sufficient factual matter, accepted

15  as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S.

16  662, 678 (2009).  A claim is plausible on its face "when the plaintiff pleads factual

17  content that allows the court to draw the reasonable inference that the defendant is liable

18  for the misconduct alleged." *Id.*  Dismissal for failure to state a claim "is proper if there

19  is a lack of a cognizable legal theory or the absence of sufficient facts alleged under a

20  cognizable legal theory." *Conservation Force*, 646 F.3d at 1242.  In considering a

21  motion to dismiss, a court must accept all well-pleaded allegations of material fact as true

22  and draw all reasonable inferences in favor of the plaintiff.  *See Wyler Summit P'ship v.*

1   *Turner Broad. Sys., Inc.*, 135 F.3d 658, 661 (9th Cir. 1998).  A court, however, need not

2   accept as true a legal conclusion presented as a factual allegation.  *Iqbal*, 556 U.S. at 678.

3   A court may consider only the pleadings, documents attached to or incorporated by

4   reference in the pleadings, and matters of judicial notice.  *Ritchie*, 342 F.3d at 908.

5   **B.    Standing**

6          Article III standing is a prerequisite to this court's capacity to make a substantive

7   determination in this case.  *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 93

8   (1998).  Accordingly, the court first analyzes Judicial Defendants' motion to dismiss for

9   lack of standing under Rule 12(b)(1).  To demonstrate that he has standing to sue for

10  declaratory and injunctive relief, Mr. Eugster must demonstrate probability of future

11  injury, causation, and redressability.  *Lujan*, 504 U.S. at 560-61; *San Diego Cty.*, 98 F.3d

12  at 1126.

13         Judicial Defendants argue that Mr. Eugster lacks standing to challenge the

14  constitutionality of Washington's attorney disciplinary system because there is no

15  "imminent prospect of harm to Eugster" from that system.  (Jud. Mot. at 9-11.)  This may

16  be accurate—indeed, Mr. Eugster's direct challenges to the WSBA's attorney

17  disciplinary system have previously been dismissed for lack of standing, *Eugster v.*

18  *Wash. State Bar Ass'n*, Case No. 09-CV-0357SMM, 2010 WL 2926237, at *11 (E.D.

19  Wash. July 23, 2010)—but it is irrelevant.  Mr. Eugster does not challenge the attorney

20  disciplinary system in this case; rather, he argues that compulsory WSBA membership

21  and dues violate his constitutional freedoms of association and speech.  (*See generally*

22  Am. Compl.)  As Mr. Eugster clarifies in his amended complaint, disdain for the structure

1  of the disciplinary system is merely an example of the harm Mr. Eugster alleges is caused

2  by compelled membership in the WSBA. (*Id.* ¶ 44.)

3      Mr. Eugster successfully demonstrates a genuine threat of imminent future harm.

4  *See San Diego Cty.*, 98 F.3d at 1126. The WSBA uncontrovertibly assesses compulsory

5  bar dues and requires membership in order to practice law in Washington. RCW

6  2.48.130, .170. These restrict and compel speech and association in ways that Mr.

7  Eugster alleges are unconstitutional. He has thus alleged concrete and particularized

8  harm. *Lujan*, 504 U.S. at 560. Moreover, these alleged constitutional violations are sure

9  to persist unless the law is changed or enforcement is enjoined. *San Diego Cty.*, 98 F.3d

10 at 1126. This satisfies the injury element of standing.

11      The parties do not dispute that enforcement of the State Bar Act causes the alleged

12 burden on Mr. Eugster's constitutional rights, and that enjoining its enforcement would

13 redress those alleged constitutional harms. This establishes causation and redressability,

14 the final two elements of standing. *Massachusetts v. E.P.A.*, 549 U.S. at 540.

15 Accordingly, the court finds that Mr. Eugster has standing to sue in this case, and denies

16 that grounds for dismissal.

17 **C.    Failure to State a Claim**

18      Judicial Defendants and WSBA Defendants (collectively, "Defendants") move to

19 dismiss for failure to state a claim. (*See* Jud. Mot.; WSBA Mot.) Defendants contend

20 that compelled state bar membership is constitutional under binding case law in the Ninth

21 Circuit and that Mr. Eugster has failed to point to any fact supporting his allegation that

22

1   the WSBA misuses mandatory dues; thus, Defendants contend, they are entitled to

2   dismissal on both of the purported constitutional violations. The court agrees.

3        1.  Compulsory Membership

4        Mr. Eugster claims that mandatory membership in the WSBA "constitute[s]

5   compelled speech and association" in violation of his First and Fourteenth Amendment

6   rights. (Am. Compl. ¶ 40.) Acknowledging that this matter has long been considered

7   settled under Supreme Court and Ninth Circuit precedent, Mr. Eugster argues that *Harris*

8   *v. Quinn*, --- U.S. ---, 134 S. Ct. 2618 (2014), upended more than a half-century of that

9   law. (Am. Compl. ¶ 41.) Specifically, Mr. Eugster references a passage written by the

10  *Harris* majority, which he includes in his amended complaint as follows:

11           Justice Samuel Alito, writing for the majority, said, "[T]he Court [has]
             never previously held that compulsory membership in and the payment of
12           dues to an integrated bar was constitutional, and the constitutionality of
             such a requirement was hardly a foregone conclusion" (Emphasis added.).
13
14  (*Id.* ¶ 41 (alterations, emphasis, and errors in original).) This quotation grossly misstates

15  the Supreme Court's language and meaning. Justice Alito's actual language is, "[T]he

16  Court *had* never previously held" as much. *Harris*, 134 S. Ct. at 2629 (emphasis added).

17  In the context of the opinion, the meaning of this is: "[When *Hanson* was decided in

18  1956,] the Court had never previously held [as much.]" *Harris*, 134 S. Ct. at 2629 (citing

19  *Railway Emps.' Dept. v. Hanson*, 351 U.S. 225, 238 (1956)). In the almost sixty years

20  that have passed since the *Hanson* decision, however, the Supreme Court and Ninth

21  Circuit have held as much several times, and in no uncertain terms. In other words, by

22  substituting "has" for "had," Mr. Eugster misconstrued the clear meaning of the opinion.

1    Notwithstanding Mr. Eugster's mischaracterization of case law, several binding

2    decisions govern his case.  In *Lathrop v. Donohue*, the Supreme Court upheld

3    Wisconsin's integrated state bar on the bases that (1) the only "compelled association"

4    was the payment of dues, which was insufficient on its own to comprise a constitutional

5    violation, and (2) the purpose of integrating the bar was to "'promote high standards of

6    practice and the economical and speedy enforcement of legal rights.'"  367 U.S. 820,

7    827-28, 832-33 (1961) (quoting *In re: Integration of the Bar*, 77 N.W.2d 602, 603 (Wis.

8    1956)).  Although *Lathrop* was a plurality opinion, *Keller v. State Bar of California*

9    clarified that "lawyers admitted to practice in the State may be required to join and pay

10   dues to the State Bar."  496 U.S. 1, 4 (1990).  "[T]he compelled association and

11   integrated bar are justified by the State's interest in regulating the legal profession and

12   improving the quality of legal services."  *Id.* at 13.  Accordingly, the Ninth Circuit has

13   held that "a state may constitutionally condition the right of its attorneys to practice law

14   upon the payment of membership dues to an integrated bar."  *O'Connor v. State of Nev.*,

15   27 F.3d 357, 361 (9th Cir. 1994) (citing *Lathrop*, 367 U.S. at 843; *Keller*, 496 U.S. at 4);

16   *see also Gardner v. State Bar of Nev.*, 284 F.3d 1040, 1042 (9th Cir. 2002) (treating it as

17   a given that integrated bars can charge mandatory dues), *Morrow v. State Bar of Cal.*,

18   188 F.3d 1174, 1177 (9th Cir. 1999) (treating *Lathrop* as holding that "the regulatory

19   function of the bar justified compelled membership").

20      Mr. Eugster argues, however, that the plurality decision in *Lathrop*, the subsequent

21   clarification in *Keller*, and those cases' Ninth Circuit progeny are all misunderstood.

22   (Resp. at 6-17.)  He contends that *Keller*'s declaration that "the compelled association

1   and integrated bar are justified by the State's interest" is "wrong" because "earlier in the

2   opinion the court made it clear that *Lathrop* was a plurality decision." (Resp. at 10.) The

3   conclusion one must reach, according to Mr. Eugster, is that "the Court in *Keller* did not

4   decide the issue of compulsory membership in a bar association." (*Id.*) This argument is

5   nonsensical. To the extent the holding of the split *Lathrop* court was unclear, the

6   unanimous Supreme Court in *Keller* had every right to clarify it in manner that binds this

7   court and the Ninth Circuit. Put differently, even if *Lathrop* had never been decided,

8   *Keller* binds this court to the determination that "lawyers admitted to practice in the State

9   may be required to join and pay dues to the State Bar." *Keller*, 496 U.S. at 4. Thus,

10  absent a state bar that differs appreciably from those at issue in *Lathrop* and *Keller*,

11  compelled membership in a state bar association is constitutional. *Morrow*, 188 F.3d at

12  1177. Mr. Eugster has provided no such differentiation of the WSBA. *Lathrop* and

13  *Keller* control his claim.

14      The court therefore determines Mr. Eugster has failed to state a claim under which

15  he is entitled to relief. The court accordingly dismisses his claim regarding compulsory

16  membership in the WSBA.

17      2. Compulsory Dues

18      Mr. Eugster also contends that the WSBA infringes upon his First and Fourteenth

19  Amendment rights by spending compulsory dues on improper activities without

20  providing adequate procedure to evaluate and challenge that spending. (Am. Compl.

21  ¶¶ 49-72.) Compulsory membership in a state bar association is justified by the state's

22  interest in "regulating the legal profession and improving the quality of legal services."

1  *Keller*, 496 U.S. at 13.  A state bar association is accordingly only constitutionally

2  entitled to use such dues to fund activities "germane to those goals." *Id.* at 14.

3  Conversely, state bar associations cannot use such mandatory dues to fund "those

4  activities having political or ideological coloration which are not reasonably related to the

5  advancement of such goals." *Keller*, 496 U.S. at 15.  The Supreme Court concedes that

6  differentiating between proper spending and "political or ideological" spending will be

7  difficult at times. *Id.*

8      The WSBA has established a procedure called the "Keller Deduction," by which

9  members choose whether to allow their bar dues to be used for "nonchargeable"—in

10  other words, political or ideological—activities. *Keller Compliance Website*.  The

11  procedure for calculation and objection employed by the WSBA is based on the

12  procedures for labor unions that the Supreme Court approved in *Chicago Teacher's*

13  *Union, Local No. 1, AFT, AFL-CIO v. Hudson*.  475 U.S. 292 (1986).  In that case, the

14  Court required a labor union's agency fees to include "an adequate explanation of the

15  basis for the fee, a reasonably prompt opportunity to challenge the amount of the fee

16  before an impartial decisionmaker, and an escrow for the amounts reasonably in dispute

17  while such challenges are pending." *Id.* at 310.  The WSBA provides its members annual

18  notice of the fee, a description of how it is calculated, and the ability to receive either a

19  refund or a deduction for the portion of dues used for nonchargeable purposes. *Keller*

20  *Compliance Website*.  A neutral arbitrator, appointed by the Chief Justice of the

21  Washington Supreme Court, hears timely challenges to that amount. *Id.*  In the

22

1   meantime, parties retain disputed funds. *Id.* Parties can present evidence and argument

2   at the arbitration hearing, after which the arbitrator issues a written, binding ruling. *Id.*

3        All newly admitted members are provided notice of this procedure, and it is easily

4   accessed and prevalently displayed on the WSBA's website. *Id.* The WSBA uses the

5   prior year's legislative budget as a proxy to calculate what is "not reasonably related to

6   the regulation of the legal profession or improving the quality of legal services," and thus

7   subject to exemption. *Id.* This amount becomes the current year deduction for WSBA

8   members that choose not to pay nonchargeable moneys. *Id.* The Supreme Court has

9   validated this prior-year calculation process in the union dues context. *See Hudson*, 475

10  U.S. at 307 n.18. In other words, the WSBA provides robust procedural safeguards to

11  ensure compliance with *Keller*, many of them responding directly to Supreme Court

12  precedent.

13       Aside from procedure, Mr. Eugster identifies several activities that the WSBA

14  funds without reimbursement, which he contends should be classified as nonchargeable

15  under *Keller*. (Am. Compl. ¶ 69.) Importantly, his bare assertion that the activities are

16  nonchargeable is legally conclusory and thus insufficient; he must plead "factual content

17  that allows the court to draw the reasonable inference that the defendant is liable for the

18  misconduct alleged." *Ashcroft*, 556 U.S. at 678. Applying that standard to this case, Mr.

19  Eugster must plead facts that give rise to a reasonable inference that the unreimbursed

20  activities paid for with mandatory dues are unrelated to "regulating the legal profession

21  and improving the quality of legal services." *Keller*, 496 U.S. at 13. He fails to do so in

22  his amended complaint.

ORDER- 15

1    The first activity he specifies is "Supreme Court mandated activities and boards

2  [with] funding and staffing to be provided by the WSBA," including the disciplinary

3  board, the mandatory continuing legal education board, the limited practice board, the

4  access to justice board, the practice of law board, and the limited license legal technician

5  board. (*Id.* ¶ 69(a).)  All of these boards appear geared toward regulating the profession

6  and improving the quality of legal services, and there is no suggestion that their names

7  are misleading.  Nowhere does Mr. Eugster provide a description of these boards or a

8  rationale as to why they should be deemed nonchargeable. (*See generally id.*)  The other

9  specific activities Mr. Eugster lists,[5] again without any explanation as to why they should

10 be nonchargeable, are "mindfulness programs, the WSBA NWLawyer, and conventions."

11 (*Id.* ¶ 69(c)-(e).)  It strains credulity to argue that these undertakings are not geared

12 toward regulating the legal profession or improving the quality of legal services. *See*

13 *Keller*, 496 U.S. at 13.  Of course, with factual allegations that these names are

14 misleading as to the programs' true purpose, Mr. Eugster could overcome dismissal.

15 *Iqbal*, 556 U.S. at 678.  Instead, Mr. Eugster makes no argument that any of the

16 underlying activities are nonchargeable, nor can the court reasonably infer anything of

17 the sort from the mere mention of these three WSBA activities.  This is insufficient to

18 avoid dismissal. *See Iqbal*, 556 U.S. at 678.  Finally, Mr. Eugster lists as nonchargeable

19

20 _____

21    [5] In Mr. Eugster's amended complaint, the second item in the list of allegedly
   nonchargeable activities provides the language from the WSBA's website regarding the Keller
   Deduction. (Am. Compl. ¶ 69(b).)  Because Mr. Eugster cites this information earlier (*id.* ¶ 52),
22 and it is a complete nonsequitur, the court takes this to be a typographical error and proceeds to
   analyze the rest of the purported nonchargeable programs.

1   "[o]ther programs and activities which will become known and understood" after he has

2   the chance to audit a WSBA budget.  (Am. Compl. ¶ 69(f).)  Given that he has failed to

3   specify facts that give rise to a plausible inference that any of the WSBA activities he

4   lists are nonchargeable, this final catchall amounts to an aspirational assertion.  The

5   "absence of sufficient facts alleged under a cognizable legal theory" leads the court to

6   conclude that Mr. Eugster's claim fails as a matter of law.  *Conservation Force*, 646 F.3d

7   at 1242.

8          In sum, Mr. Eugster alleges no facts supporting an inference that the WSBA's

9   procedural safeguards and substantive definition of chargeable dues infringes on his

10  constitutional rights to free association and speech.  The court therefore determines Mr.

11  Eugster has failed to state a claim under which he is entitled to relief.

12  **D.     Leave to Amend**

13         As a general rule, when a court grants a motion to dismiss, the court should

14  dismiss the complaint with leave to amend.  *See Eminence Capital, LLC v. Aspeon, Inc.*,

15  316 F.3d 1048, 1051-52 (9th Cir. 2003) (citing Fed. R. Civ. P. 15(a)).  "Dismissal with

16  prejudice and without leave to amend is not appropriate unless it is clear on de novo

17  review that the complaint could not be saved by amendment."  *Id.* at 1052.  In

18  determining whether dismissal without leave to amend is appropriate, courts consider

19  such factors as undue delay, bad faith or dilatory motive on the part of the movant,

20  repeated failure to cure deficiencies by amendments previously allowed, undue prejudice

21  to the opposing party by virtue of allowance of the amendment, and futility of

22

1   amendment. *Foman v. Davis*, 371 U.S. 178, 182 (1962). Of these factors, "prejudice to

2   the opposing party . . . carries the greatest weight."[6] *Eminence Capital*, 316 F.3d at 1052.

3          The court concludes that amendment of Mr. Eugster's complaint regarding

4   mandatory bar membership would be futile, and thus dismisses that claim with prejudice.

5   *See Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995) ("Futility of amendment can, by

6   itself, justify the denial of a motion for leave to amend."). Defendants' motions put Mr.

7   Eugster on notice of the legal deficiencies in his initial complaint, and in response he

8   filed the operative, amended complaint that the court now considers. (*Compare* Compl.

9   *with* Am. Compl.) With respect to his claim regarding compelled membership in the

10  Washington bar, Mr. Eugster's amended complaint suffers the same deficiencies that

11  Defendants identified—it misinterprets and misconstrues binding precedent that governs

12  the court's decision in this case. *See supra* Part III.C.1. This continued reliance on a

13  flawed understanding of case law illustrates the futility of the claim and Mr. Eugster's

14  inability to cure it. Put simply, mandatory membership in a state bar association is

15  constitutional. *See Keller*, 496 U.S. at 4. Unequivocal precedent makes it "clear . . . that

16  the [claim] could not be saved by amendment." *Eminence Capital*, 316 F.3d at 1052.

17

18

19
       _____

20     [6] The Ninth Circuit has further instructed that a district court should not dismiss a pro se
       complaint without leave to amend unless "it is absolutely clear that the deficiencies of the
       complaint could not be cured by amendment." *Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir.
21     2012) (quoting *Schucker v. Rockwood*, 846 F.2d 1202, 1203 (9th Cir. 1988)). However, "a pro
       se lawyer is entitled to no special consideration." *Godlove v. Bamberger, Foreman, Oswald, &*
22     *Hahn*, 903 F.2d 1145, 1148 (7th Cir. 1990). The court accordingly treats Mr. Eugster's
       pleadings with no special solicitousness.

1    Accordingly, the court dismisses with prejudice Mr. Eugster's claim that Washington's

2    integrated bar is unconstitutional. *See Bonin*, 59 F.3d at 845.

3        On the other hand, the court grants Mr. Eugster leave to amend his claim regarding

4    nonchargeable bar dues.  His initial complaint included no factual allegations about mis-

5    categorized nonchargeable activities. (*See* Compl.)  Both Judicial Defendants (Jud. Mot

6    at 9), and WSBA Defendants (WSBA Mot. at 10), indicate this lack of factual specificity

7    in their motions to dismiss.  In response, Mr. Eugster amended his complaint to include a

8    section purporting to designate specific unreimbursed WSBA spending that violates

9    *Keller*. (*See* Am. Compl. ¶ 69.)  These allegations attempt to address the lack of

10   specificity in his original complaint, as identified in Defendants' motions. (*See id.*)

11   Although the court determines these allegations in the amended complaint are

12   insufficient, *see supra* Part III.C.2., the factual development since the original complaint

13   leads the court to conclude that it is conceivable that Mr. Eugster could re-amend the

14   amended complaint to contain "factual content that allows the court to draw the

15   reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556

16   U.S. at 678.  Thus, the court does not find amendment futile, nor does it see any undue

17   delay, bad faith, or undue prejudice present. *See Foman*, 371 U.S. at 182.  Accordingly,

18   the court dismisses Mr. Schreib's constitutional claim regarding compulsory bar dues but

19   grants him leave to amend.

20   **E.    Immunity**

21       Even if Mr. Eugster had succeeded in stating a claim under which relief could be

22   granted, or succeeds in doing so upon re-amendment of his complaint, the WSBA is

ORDER- 19

1   immune from suit.  The Eleventh Amendment bars suits against a state and its agencies.

2   *See Lake Cty. Est., Inc. v. Tahoe Reg'l Planning Agency*, 440 U.S. 391, 400-01 (1979).

3   The Ninth Circuit treats state bar associations as an "arm of the state" and thus immune

4   from suit.  *Ginter v. State Bar of Nev.*, 625 F.2d 829, 830 (9th Cir. 1980); *see also Hirsh*

5   *v. Justices of the Supreme Court of the State of Cal.*, 67 F.3d 708, 715 (9th Cir. 1995);

6   *Lupert v. Cal. State Bar*, 761 F.2d 1325, 1327 (9th Cir. 1985).  The Ninth Circuit's

7   reason for treating bar associations as state agencies is that they operate as the

8   "investigative arm" of the state high court.  *O'Connor*, 686 F.2d at 750.  There is nothing

9   on the record to meaningfully differentiate Washington's bar association from those that

10   the Ninth Circuit has expressly declared immune under the Eleventh Amendment.  *See,*

11   *e.g., id.* (Nevada); *Hirsh*, 67 F.3d at 715 (California).  Indeed, its power to regulate and

12   punish lawyers makes clear that the WSBA does operate as the "investigative arm" of the

13   Washington Supreme Court.  *See O'Connor*, 686 F.2d at 750.  Thus, as a federal court in

14   this state has already apprised Mr. Eugster, the WSBA is a state agency immunized from

15   suit by the Eleventh Amendment.  *See Eugster*, 2010 WL 2926237, at *8.  Accordingly,

16   Mr. Eugster's claims against the WSBA are dismissed with prejudice.[7]

17   ## IV.   CONCLUSION

18        For the foregoing reasons, the court GRANTS in part Judicial Defendants' motion

19   to dismiss (Dkt. # 9) and WSBA Defendants' motion to dismiss (Dkt. # 10).  Mr.

20   Eugster's claim regarding mandatory bar membership is DISMISSED WITH

21   _____

22        [7] This means that although Mr. Eugster has the court's leave to amend his complaint as it relates to nonchargeable bar dues, the WSBA is dismissed with prejudice as a party to that claim.

1    PREJUDICE with respect to all defendants.  His claim regarding mandatory bar dues is

2    DISMISSED WITH PREJUDICE with respect to the WSBA and DISMISSED

3    WITHOUT PREJUDICE with respect to all other defendants.  The court GRANTS Mr.

4    Eugster leave to amend his complaint regarding mandatory bar dues within 10 (ten) days

5    of this order.  Failure to amend in that time will result in dismissal with prejudice.  The

6    court STRIKES Mr. Eugster's surreply (Dkt. # 18).

7        Dated this 2nd day of September, 2015.

8                                                    _____

9                                                    JAMES L. ROBART
                                                     United States District Judge

10

11

12

13

14

15

16

17

18

19

20

21

22

ORDER- 21